## WILSON v. ENGLISH.

### No. 12921.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1940.

Rehearing Denied Nov. 23, 1940.

Roy W. McDonald and Herbert S. Bonney, Jr., both of Dallas, for appellant.

Callaway & Reed and Frank C. Brooks, all of Dallas, for appellee.

BOND, Chief Justice.

Plaintiff, George N. Wilson, instituted this suit in a county court of Dallas County, Texas, against Clarence T. English, doing business under the trade style of English Freight Company, for damages, both actual and exemplary; the actual damages alleged are of the sum of $75, and exemplary damages $250, making a total of $325, within the jurisdictional limits of the court. The defendant answered by special demurrer to plaintiff's plea for exemplary damages and to the jurisdiction of the court for alleged actual damages; and specially pleaded, by supplemental petition, an independent offset and counterclaim for debt in the sum of $86.

The trial court sustained defendant's demurrer to plaintiff's plea for exemplary damages and plea to the jurisdiction of the court, accordingly, dismissed plaintiff's suit; and, also, dismissed defendant's cross-action. Plaintiff alone excepted, gave notice of appeal and presents assignments of error to the action of the court.

We think the trial court erred in sustaining defendant's demurrer to plaintiff's suit for exemplary damages and dismissing his cause of action for lack of jurisdiction. The transaction involved in this suit, whereby defendant got possession of

300 lbs. of coffee from plaintiff, of the reasonable value of $75, under circumstances alleged in plaintiff's petition, amounts to a conversion of plaintiff's property in a manner to give rise for exemplary damages. Plaintiff alleged:

"That the defendant intentionally, fraudulently and maliciously, in wanton disregard for the plaintiff's rights, sent his agent, A. R. Tullos or A. R. Tullis, to the plaintiff's place of business to inquire about wholesale prices for plaintiff's coffee and to represent himself as a salesman who was interested in selling plaintiff's coffee in and about Austin, Texas, as set out in paragraph 2(a) hereof; and the defendant intentionally, fraudulently and maliciously, in wanton disregard for the plaintiff's rights, caused the said A. R. Tullos or A. R. Tullis to call the plaintiff by telephone on the 21st day of February, 1938, and fraudulently and maliciously placed an order for 500 lbs. of plaintiff's Jamo Blend Coffee; that the defendant and his agent, the said A. R. Tullos or A. R. Tullis, did not, at the time of placing such order, intend or have not since intended to ever in good faith purchase said coffee or pay for the same, but procured possession thereof for the purpose of keeping the same to square an alleged indebtedness of $86.00 due the defendant by the plaintiff; that the defendant intentionally, maliciously and fraudulently, in wanton disregard for plaintiff's right, took possession of plaintiff's said coffee, as set out more fully in paragraph 2(c), for the sole purpose of appropriating the same to his own use and benefit, and accepted the same from the plaintiff, knowing that the plaintiff was wholly unaware of the defendant's fraudulent scheme to take possession of said coffee; that the plaintiff was at the time of delivery of said coffee to the defendant, unaware of the defendant's fraudulent scheme to take possession of said coffee; that the defendant had no intention at the time he took possession of the said coffee of ever hauling the same to Austin, Texas, and has never since such time had any such intention.

"4. That the defendant has not hauled the said 300 lbs. of Jamo Blend Coffee to Austin, Texas, in accordance with the instructions of plaintiff, as more fully set out in paragraph 2(c); that the defendant has retained possession of the said coffee and kept the same in its possession at Dallas, Texas, intentionally, fraudulently and maliciously, in wanton disregard of plaintiff's rights, for the defendant's own use and benefit, or the said defendant has otherwise disposed of the said coffee to the plaintiff's damage.

"5. That the plaintiff, on or about the 28th day of February, immediately upon learning of the defendant's fraudulent and malicious scheme, demanded the return of said 300 lbs. of Jamo Blend Coffee, wrongfully taken by the defendant, but that the defendant has failed and refused and still fails and refuses to return said coffee to the plaintiff or to return any part thereof to the plaintiff, all of which is to the plaintiff's damage.

"6. That the intentional, fraudulent and malicious acts of the defendant, as herein set out, to obtain the said 300 lbs. of Jamo Blend Coffee, and the obtaining the possession thereof by such acts, in the retaining of the 300 lbs. of Jamo Blend Coffee by the defendant after demand for the return thereof had been made by the plaintiff, all constitute conversion and each constitutes conversion of the plaintiff's said coffee by the defendant.

"7. * * * That the plaintiff is entitled to exemplary or punitive damages for the intentional, fraudulent and malicious acts of the defendant, as complained of herein, of obtaining and holding the said 300 lbs. of Jamo Blend Coffee, the sum of Two Hundred and Fifty and no/100 ($250.00) Dollars."

A careful review of plaintiff's petition shows that his claim for actual damages is not one based solely upon a contract, or the breach of a contract mutually agreed upon by the parties. It reveals a wanton disregard of plaintiff's rights. So, in a suit of this character, allegations for exemplary damages are sufficient, when property in the possession of plaintiff is alleged to have been wrongfully obtained by another by malicious misrepresentations with a fraudulent intention, purpose, scheme and plan to convert same to his own use and benefit. Such allegations, that the acts of the defendant in obtaining the coffee and converting same intentionally, fraudulently and maliciously, in wanton disregard of the rights of the owner of the property in an effort to collect an alleged claim or debt, are strong indictments of wrongdoing, warranting a claim for exemplary damage.

Courts cannot sanction a collection of a debt, by fraudulent means, as alleged in plaintiff's petition; accordingly, the judg-

948

ment of the court below is reversed and cause remanded for trial.

Reversed and remanded.

## On Motion for Rehearing.

PER CURIAM.

In our original opinion reversing and re-manding this cause, for error of the trial court in sustaining defendant's special exception relating to plaintiff's exemplary damages and, for lack of jurisdiction, dismissing the suit both as to plaintiff and defendant, we did not mention appellant's assignment of error relating to the trial court's action in overruling his demurrer to defendant's cross-action, or offset and counterclaim. This assignment did not escape our attention.

Defendant's cross-action, or offset and counterclaim, against plaintiff's cause of action was a controverted independent suit, in no way connected with, incident to, or growing out of plaintiff's tort action for damages. The trial court having dismissed defendant's cross-action, to which defendant did not except, give notice of appeal, or urge counter or cross-assignment of error, we concluded that such action of the trial court effectively precludes further consideration of the cross-complaint on another trial. This may have been an incorrect preclusion. However, be that as it may, plaintiff's exception to the cross-action, or offset and counterclaim, should have been sustained by the trial court, and the same result thus obtained.

It would be anomalous to allow a creditor to obtain possession of property belonging to another, by "fraudulent misrepresentations and with malicious intention, scheme, plan, and purpose, to convert same to his own use and benefit," for the sole purpose of appropriating it to the payment of his debt and, thereafter, in a suit by the debtor for damages growing out of such wanton taking, to offset such damages by a counterclaim for his debt. Courts in this country are created to redress wrongs, not to encourage them, and to permit the collection of a debt against a defaulter, under such circumstances, cannot be countenanced. A tort-feasor, effecting collection of a debt by offsetting wrongful appropriation of a debtor's property, is but a sanction of a wrong. A suit for damages growing out of a wrongful conversion, as alleged in this suit, should not be encumbered with an independent action to effect collection of an alleged claim, antedating the conversion, which was in nowise connected with, incident to, or growing out of the suit for damages; accordingly, plaintiff's demurrer should have been sustained, and the cause is remanded to the court below for trial in keeping with our opinion.